## Lewis v. Commonwealth.

(Decided May 29, 1931.)

LEWIS J. TOOMBS and ADOLPH GRAVES for appellant.

J. W. CAMMACK, Attorney General, and GEORGE HUNT MITCHELL, Assistant Attorney General, for the Commonwealth.

Opinion of the Court by Hobson, Commissioner— Affirming.

George Lewis was indicted for the willful murder of his wife, Amy Lewis, in the Fayette circuit court. On final trial he was found guilty, and his punishment fixed at death. He appeals.

There is no complaint of the admission or rejection of testimony or the instructions of the court. In the brief a statement of the commonwealth attorney is complained of, but this is not shown by the bill of exceptions, and the opinion of the circuit court shows that he sustained the defendant's objection to this statement and excluded it. The only grounds shown by the record and relied on for reversal are. that the court should have peremptorily instructed the jury to find for the defendant, and that the verdict is against the evidence. This requires a statement of the facts.

George Lewis and his wife were colored people. They were married on October 16, 1916, he being then nineteen and she fourteen years of age. After they had been married several years and had several children he became convinced that his wife was maintaining improper relations with one Tom Graves. She confessed her guilt, and he and she went before the county judge. The judge, after hearing them both, in view of their age and the fact that they really loved each other, advised George to go home with his wife and take care of her. Thus things stood for some years. Then George Lewis got into the moonshine business and one Curley Dunn was his partner. Dunn was much at the house and Lewis became jealous and left home. He did not return for some time, but Dunn was convicted in court and sentenced to jail for six months in December, 1928. Lewis then returned home and lived with his wife until August, 1929, when, Dunn having gotten out of jail, some trouble arose again. Lewis separated from his wife and children and there was very bad feeling between him and her mother, who sided with her daughter. On October 15, about 11:30 p. m., Amy Lewis was at a restaurant at the corner of Fifth and Smith streets in Lexington, and after leaving the restaurant went up Smith street in the direction of her sister's house alone. A few minutes after she left the restaurant and went up Smith street,

which was not lighted, a shot was heard, and a woman screamed. A few minutes before this Lewis had been seen not far from the corner of Fifth and Smith streets. Amy Lewis was found shot in the back from a shot gun, the shot covering a range of about 1½ inches in diameter. There was also another shotgun wound on her left leg. The police were called at 12:10. They hunted everywhere for Lewis, but could not find him. They took the wife to the hospital, where she soon died. A path led from the side of Smith street over to the railroad track. Just after the shot was fired a woman, across whose lot this path ran, heard steps of a person running out this path. A clothesline stretched across the path, and when she went out the next morning she found a man's hat lying on the path. This hat was identified by other evidence as the hat the defendant was wearing that day. The police continued to look everywhere for Lewis, but could not find him. From Cincinnati, a day or so later, Lewis wrote to a friend in Lexington this letter: "Dear Foley: I am on my way to Arkansas. How is Amy T? You wont see me any more. I am sorry I had to Kill Amy T. Good-by." Lewis returned to Lexington on October 20, and when asked by the policeman, who then arrested him, what he had done with the shotgun he shot his wife with, he said that he carried it to Cincinnati and threw it out of the box car into the river.

On the other hand, the defendant testified, in substance that his wife left home that night without reason, as far as he knew, and suspecting that she was going to meet Dunn, and that they would come along on Smith street, he got his gun and concealed himself on the side of the street; that he had not been there long when they came up the street together and stopped. Dunn put his arms around his wife and began kissing her; that he hollered at them and when Dunn saw him with the gun he pulled Amy Lewis between him and the gun just as the gun went off; that he was aiming to shoot Dunn and not his wife and had no thought of killing his wife; that he loved his wife. He also stated, in substance, that by reason of wife's treatment he was torn all to pieces; he had fallen off and only weighed 129 pounds. He could not eat and had no sense. He introduced several other witnesses who testified to the same facts as to his condition of mind.

On the other hand, the commonwealth proved by Dunn and five or six other witnesses that Dunn was at another place and was not with Amy Lewis at all; that nobody was with her. It also proved by five physicians, who examined Lewis, that he was not of unsound mind. The court took every necessary step to protect the defendant's rights. He was too poor to employ a lawyer. The court appointed two well-known members of the bar to defend him. They defended him with great care and industry. On their suggestion the court appointed two physicians to examine the defendant and report on his soundness of mind. These physicians, being in some doubt, asked that he be transferred to the insane asylum and be more fully investigated there. He was there examined by three other physicians, who make a specialty of such examinations, and in the end all five of the doctors agreed that he was of sound mind. But though this was true at the time they examined him, he may have been in a very excited frame of mind at the time of the homicide, and when this excited condition passed away his mind would be better.

On the other hand, the great weight of evidence is to the effect that Dunn was not there; that Amy Lewis came along alone and the defendant intentionally shot his wife and afterwards told the story differently at the trial for effect on the jury. But however all this may be, these were questions for the jury. Their verdict was not palpably against the evidence. The defendant's letter written from Cincinnati, what he said to the policeman on his return, and the other proof in the case as to how the homicide was committed, was clearly sufficient to warrant the refusal of a peremptory instruction on the commonwealth's proof. The defendant, when introduced, not only admitted writing the letter, but also admitted the homicide. While the verdict is a severe one, the court cannot reverse a judgment for this reason; for under the statute the punishment is within the discretion of the jury.

Judgment affirmed.